FILED

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

04 MAR 25 PH 2: 35

U.S. DISTRICT COURT
N.D. OF ALABAMA

CLARA DENISE WEST,                    }
                                      }
        Plaintiff,                    }
                                      }
v.                                    }        CASE NO. CV 01-B-3312-NE
                                      }
LES BROWNLEE,                         }
 Acting Secretary of the Army,        }
                                      }        ENTERED
        Defendant.                    }
                                      }        MAR 25 2004

## MEMORANDUM OPINION[1]

Currently before the court is defendant's Motion for Summary Judgment, filed by Les

Brownlee ("defendant" or "Brownlee"), Acting Secretary of the Army  ("Army").[2]  (Doc. 20.)

In her Complaint,[3] plaintiff Clara Denise West ("plaintiff" or "West") asserts claims of

---

[1]  At the conclusion of oral argument, the court informed the parties of its intention to grant summary judgment in favor of defendant.  The court requested that counsel for defendant prepare a proposed memorandum opinion for the court.  Although the court has made some changes to the opinion prepared by defendant's counsel, it has adopted a large part of the proposed opinion.  The court is aware of the admonition of the Eleventh Circuit that district courts not delegate "the task of drafting important opinions to litigants." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1373 n.46 (11th Cir. 1997).  This is an important opinion.  Before requesting a proposed opinion from defendant's counsel, the court had reached a firm decision as to the appropriate outcome.  Counsel drafted the opinion according to the express instructions of the court as to its contents.  These instructions were stated to defendant's counsel, with plaintiff's counsel present, following oral argument.  Although largely taken from the opinion proposed by defendant's counsel, the court personally reviewed this opinion, and the opinion reflects the court's own conclusions.

[2]As originally filed, the Complaint named Thomas White, Secretary of the Army, as the defendant.  Since the filing of the Complaint, as amended, White has been replaced by Les Brownlee as Acting Secretary of the Army.  By rule, Brownlee was automatically substituted for White.  Fed.R.Civ.P. 25(d)(1).

[3]West filed a Complaint, *pro se*, on December 21, 2001.  (Doc. 1.)  Subsequently, via counsel, West filed an Amended Complaint on February 20, 2002 (doc. 4) and a Second

31

discrimination based upon race, sex, and retaliation for engaging in protected activity pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-16(c), and 29 C.F.R. pt. 1614.  (Doc. 14.) Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment is due to be granted.

## I.    **FACTUAL SUMMARY**

### A.    **Employment Background**

West is currently, and was during the time period at issue in this case, a civil engineer at the U.S. Army Aviation and Missile Command ("AMCOM") at Redstone Arsenal, Alabama. (Doc. 14 ¶ 5.)  West worked as a matrix employee in a pool of primarily engineers that were "matrixed" to various project offices.  (Doc. 21, Ex. 14 at 7-8, 14.)  West testified, "when we went on the matrix, all of the engineers were called co-located.  They could put you wherever they wanted you to go."  (Doc. 21, Ex. 18 at 11.)

During most of the time period relevant to this case, West was a General Engineer with the Patriot Project Office, grade DB-03.  (Doc. 21, Ex. 2 at 9.)  After leaving the Patriot Project Office, she returned to the Test and Evaluation Management Office ("TEMO"), her matrix organization in the Aviation Missile Research Development Engineering Center ("MRDEC"). (Doc. 21, Ex. 14 at 8, 14, 29.)  At this point, Mr. Michael McFalls served as West's supervisor. (Doc. 21, Ex. 18 at 28; Ex. 19 at 365.)

---

Amended Complaint on November 29, 2002 (doc. 14).  References to the "Complaint" herein will be to the Second Amended Complaint unless otherwise noted.

Mr. Donald Grundt served as West's first line supervisor during her time in the Patriot Project Office. (Doc. 21, Ex. 5.) Mr. Grundt was a supervisory engineer in charge of system testing of Patriot and Future Lower Tiers Air Defense Systems. (Doc. 21, Ex. 3 at 10.) Mr. Grundt selected West for the Patriot Project Office position with the concurrence of Mr. Jerome Blaine. (Doc. 21, Ex. 3 at 11; Ex. 4 at 154.) Mr. Blaine, Chief of the Test Evaluation Division, served as West's second level supervisor during her time period in the Patriot Project Office. (Doc. 21, Ex. 4 at 134.) During the period in question, West worked as the lead test engineer on the Radar Systems upgrade. (Doc. 21, Ex. 3 at 12.)

During the entire time period at issue, plaintiff did not lose her grade or pay level, was not demoted, did not have her workload increased, and was not fired or suspended. (Doc. 21, Ex. 18 at 9, 61.)

**B.    Events at Issue**

**1.    Denial of Opportunity to Attend Training Course**

West alleges discrimination when she was denied the opportunity to attend a particular training course she alleges would have enhanced her career and afforded her Level 3 certification in Programs Management ("PM"). (Doc. 14 ¶ 10.) She submitted an application package to attend the course in October 1997; it was returned to her in February 1998 when she was advised she was not being nominated to attend the course. (Doc. 21, Ex. 18 at 36.)

West was qualified to attend the program. (Doc. 21, Ex. 15 at 16-17.) However, two other individuals in her department, Mr. Zapata and Mr. Greenmeyer, were also qualified to attend the program. (Doc. 21, Ex. 15 at 17.) At the time West submitted her application, Mr. Greenmeyer's application was already being processed for attendance at the program. (*Id.*) Mr.

3

Zapata was also chosen to go to the program before West based upon his seniority in the department and also because West had recently had long-term training.  (Doc. 21, Ex. 15 at 18.)

West's application was returned to her so that she would be able to resubmit it with a new submission date when the next class was offered.  (Doc. 21, Ex. 15 at 19-20.)  According to Mr. Grundt, the question was not whether West would ever be able to attend this particular course; the question was when she would be able to attend.  (Doc. 21, Ex. 3 at 36.)  "[I]f she had stayed in the Project Office, her time would have come to go to the Advance Program Management Course."  (Doc. 21, Ex. 3 at 36.)  The first person from the division to attend the course was a female.  (Doc. 21, Ex. 15 at 11.)

### 2.    Rescheduling of China Lake Meeting

West alleges defendant discriminated against her when her management changed the date she set for a meeting in China Lake, California.  (Doc. 14 ¶ 6.)  This occurred in May 1998.  (*Id.*)

The Air Force had a system they wanted to test against the Patriot Missile Battery System.  (Doc. 21, Ex. 18 at 12.)  Since West was over the test program for this particular system, she was responsible for putting together a meeting related to the testing.  (*Id.*)   West scheduled the meeting on a Wednesday.  (*Id.* at 13.)  Thereafter, Mr. Blaine changed the meeting to a Friday.  (*Id.* at 14.)

West had told Mr. Blaine that she could not "support" a Friday meeting where she could not return on Friday night.  (*Id.* at 17.)  West did not want to be away on weekends "unnecessarily" because she did not get paid for weekend travel and she had a minor daughter.  (*Id.* at 14.)  Mr. Blaine advised West that "the people who were supporting the Air Force said that they could not support a meeting if it was not on that Friday."  (*Id.* at 17.)  West testified that

4

other meeting participants wanted to go to Las Vegas for the weekend. (*Id.* at 13.) According to West, it was the same distance to China Lake when driving from airports in Los Angeles or Las Vegas. (*Id.*)

Mr. Blaine sent one of West's co-workers, Jaime Zapata, to the China Lake meeting in her place. (Doc. 21, Ex. 18 at 17.) According to West, "[i]t was a pretty common practice in our office to substitute people for meetings. I had substituted for Jaime [Zapata] on local meetings when he had other meetings or other things that he had to do. So it was not a big deal. Not a big deal." (*Id.* at 18.)

### 3.    Performance Appraisal

On July 15, 1998, West received her performance appraisal for the time period October 1, 1997 to June 30, 1998. (Doc. 21, Ex. 6.) She received a "B" rating on the appraisal, the second highest of four possible ratings.[4] (Doc. 21, Ex. 5.) In one rating element, plaintiff alleges she was penalized for her failure to attend the meeting in China Lake, California. (Doc. 14 ¶ 6.)

Mr. Grundt rated West's performance, and Mr. Blaine was her senior rater. (Doc. 21, Ex. 5.) Both Grundt and Blaine testified that the fact that West was unable to attend the meeting had no affect on her evaluation score. (Doc. 21, Ex. 3 at 39; Ex. 15 at 36-37.) Substitutions for meetings were common; they occurred frequently because of the amount of travel required within the department. (Doc. 21, Ex. 3 at 40; Ex. 18 at 18.) Grundt also testified that West's

---

[4]In 1996, the same rating officials, Grundt and Blaine, rated West's performance at the highest level under a different rating system. (Doc. 21, Ex. 7.) In 1994 and 1995, different rating officials rated her performance at the second highest level under another rating system. (Doc. 21, Ex. 8; Ex. 9.)

evaluation score was based in part on conversations that he had with other individuals about West's being difficult to work with. (Doc. 21, Ex. 3 at 18-25.)

West testified that this rating was "set aside" in the grievance, as opposed to the EEO, process. (Doc. 21, Ex. 18 at 59; Ex. 12 at 21.)

### 4.    Lack of Meaningful Job Assignments

West also alleges that Mr. McFalls either refused or was unable to give her meaningful job assignments. (Doc. 14 ¶ 8.) She asserts that this occurred in the spring of 1999. (*Id.*) West complained to Mr. McFalls about her job assignment in the Patriot Project Office and asked him to reassign her. (Doc. 21, Ex. 18 at 24.) About the same time, the Project Manager for the Patriot Office released West back to her matrix office, and West responded positively to the change. (Doc. 21, Ex. 14 at 29-31.) Mr. McFalls made efforts to find her another position. (*Id.* at 31-40.) She was temporarily assigned to the Unmanned Area Vehicle Office, and then she returned to do work for Mr. McFall's office. (*Id.* at 31-32.) She also temporarily worked on a special project with Dr. Bruce Fowler. (*Id.* at 32.) While working in Mr. McFall's office, West was given individual job assignments which Mr. McFalls felt gave her the opportunity to meet more senior individuals in the organization including the people who made job selections. (*Id.* at 56.)

Mr. McFalls continued to make efforts to find West a permanent position; he talked to a half a dozen or more programs about bringing her into their programs. (Doc. 21, Ex. 14 at 33.) Despite these efforts, Mr. McFalls was unable to find her a permanent position due to a lack of funding for a matrix employee or the lack of need for an engineer from a matrix organization.

(Doc. 21, Ex. 14 at 34-35; Ex. 15 at 25-26.)  West was assigned to the Software Engineering Directorate in the year 2000.  (Doc. 21, Ex. 18 at 9.)

    **C.**    **Evidence of Alleged Prior Protected Activity**

West alleges she was retaliated against because of her EEO activity and opposition to unlawful employment practices.  (Doc. 14 at ¶¶ 11, 12.)  West offered no documentation as to her participation in the EEO process.  Defendant offered West's formal EEO complaint of discrimination filed on April 19, 1999.  (Doc. 21, Ex. 16.)  This was filed after the four events discussed above in Section B of this Opinion.  No evidence has been offered as to the preceding informal EEO complaint process.

Insofar as opposition clause activity, West's claims focus on her involvement with the Redstone Area Minority Employees Association ("RAMEA"), which  was not founded until July 13, 2000.  (*See* RAMEA's website at http://www.ramea7.com/newhomepage.html.)[5]


**II.**    **Summary Judgment Standard**

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The party asking for summary judgment bears the initial burden of showing that no genuine issues exist.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Once the moving party has met her burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  A dispute is genuine "if the

---

[5]Plaintiff has proffered no evidence to the contrary.

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in her favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## III.    Discussion

### A.    Claims of Race and Sex Discrimination

Plaintiff's claims of disparate treatment based upon race and sex are subject to the well-established burdens of proof analysis set forth in *McDonnell Douglas Co. v. Green*, 411 U.S. 792 (1973). To establish a prima facie case of discrimination, plaintiff must show: (1) she belongs to a protected category; (2) she was subject to an adverse job action; (3) similarly situated employees outside plaintiff's classification were treated more favorably; and (if appropriate to the claim) (4) plaintiff was qualified to do the job. *McDonnell Douglas*, 411 U.S. at 802; *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)(*per curiam*). If plaintiff establishes a prima facie case of discrimination (or retaliation), the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment action. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Defendant's burden in articulating a legitimate,

8

nondiscriminatory reason for its actions is exceedingly light. *Id.* at 255-56; *see also Meeks v. Computer Assoc. Int'l*, 15 F.3d 1013 (11th Cir. 1994).

If defendant meets its burden of production, plaintiff must present "significantly probative" evidence to prove that the articulated reason is merely pretext for intentional discrimination. *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (citing *Carter v. Miami*, 870 F.2d 578, 584 (11th Cir. 1989)). At this stage, plaintiff's obligation "merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256.

### 1.    No Adverse Employment Action

Plaintiff failed to establish a prima facie case of racial or sexual discrimination (or retaliation as will be discussed later) because the alleged actions are not actionable adverse personnel actions under the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(a) ("Title VII").[6] Section 717 of the Civil Rights Act of 1964, as amended, provides that "[a]ll **personnel actions** affecting [government] employees . . . shall be made free from any discrimination . . ." 42 U.S.C. § 2000e-16b(a) (emphasis added). *See Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981) (*en banc*).

---

[6]Defendant, citing 29 C.F.R. §§1614.107(a)(4), 1614.301(a), argues that plaintiff should be precluded from challenging her performance appraisal in this forum with allegations of discrimination because she chose to challenge it contractually in accordance with a negotiated grievance procedure. (*See* Memorandum in Support of Defendant's Motion for Summary Judgment, p. 8.) Plaintiff testified that her appraisal was not at issue in the EEO proceedings (doc. 21, Ex. 12 at 21), and that it was "set aside" during the grievance process (doc. 21, Ex. 18 at 59). Given the court's conclusion that the performance appraisal is not an adverse personnel action, the court will not decide whether this claim should also be dismissed based upon election of remedies.

The Eleventh Circuit has adopted an objective test to determine whether an employee has experienced an actionable adverse employment action: "[a] plaintiff must demonstrate that a reasonable person in his position would view the employment action in question as adverse." *Doe v. DeKalb County School District*, 145 F.3d 1441, 1449 (11th Cir. 1998). The subjective perspective of a plaintiff is irrelevant. *Id.* A personnel action is not "adverse" simply because an employee dislikes or disagrees with it. *Id.* at 1449-50. Neither "every unkind act," *id.* at 1449 (quoting *Wu v. Thomas*, 996 F.2d 271, 273 n.3 (11th Cir. 1993)), nor "everything that makes an employee unhappy" constitutes an adverse personnel action. *Id.* at 1450 (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3rd Cir. 1997) (citing *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996))). In the present case, plaintiff failed to establish that she suffered an adverse personnel action.

###### a.    Denial of Opportunity to Attend Training Course

Plaintiff complains she was not allowed to attend a course, offered periodically, prior to other co-workers who worked in the organization longer. While it may be possible to establish that deprivation of training constitutes an actionable adverse employment action in some situations, *see Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428 (11th Cir. 1998), this is not such a situation. An employee's not getting to attend a particular course at a particular time preferred by the employee is not significant enough to constitute an actionable adverse employment action. *See Bullock v. Widnall*, 953 F. Supp. 1461, 1473 (M.D. Ala. 1996), *aff'd* 149 F.3d 1196 (11th Cir. 1998)(table). *See also Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 588 (11th Cir. 2000)(finding a professor's claim concerning particular teaching assignments in a particular session not to be an actionable adverse employment action).

Although plaintiff speculates that the denial of training prevented her from being promoted, other than her speculation, plaintiff offered no evidence that the course was required for or would have assisted in her being promoted. The denial of an opportunity to attend a particular training course is not adverse action. Therefore, plaintiff has not established a prima facie case of discrimination based on her race or gender with regard to denial of training.

### b.     Rescheduling of China Lake Meeting

According to plaintiff, "[i]t was a pretty common practice in our office to substitute people for meetings. I had substituted for Jaime [Zapata] on local meetings when he had other meetings or other things that he had to do. So it was not a big deal. Not a big deal." (Doc. 21, Ex. 18 at 18.) Thus, plaintiff's own testimony reveals that the inability to attend the meeting in China Lake, California, was not subjectively an adverse personnel action. The inability of plaintiff to attend the China Lake meeting when it was moved to a Friday is not adverse personnel action on which she can base a discrimination claim.

### c.     Performance Appraisal

Receiving the second highest rather than the highest performance evaluation does not meet the level of substantiality required to constitute an actionable adverse employment action. A performance appraisal is not an "ultimate employment decision" and does not otherwise meet the "threshold level of substantiality" to be cognizable under Title VII. *Bass v. Board of County Comm'rs., Orange Co., Fla.*, 256 F.3d 1095, 1118 (11th Cir. 2001).

A negative performance evaluation, standing alone, does not constitute the type of an adverse employment action envisioned under employment discrimination statutes; it must result in "some tangible, negative effect" on plaintiff's employment. *Lucas v. W.W. Grainger*, 257

F.3d 1249, 1261 (11th Cir. 2001). *See also Brown v. Brody*, 199 F.3d 446, 458 (D.C. Cir. 1999);

*Primes v. Reno*, 190 F.3d 765, 767 (6th Cir. 1999); and *Rabinovitz v. Pena*, 89 F.3d 482, 488-89

(7th Cir. 1996)(federal sector employment discrimination cases holding that mid-level or higher

performance appraisals do not constitute actionable adverse employment actions). Plaintiff

received a "B" rating, the second highest of four levels. (Doc. 21, Ex. 5.) Moreover, on the face

of plaintiff's appraisal, there is no indication that the report is adverse. As noted by the court in

*Davis*,

> Employer criticism, like employer praise, is an ordinary and appropriate
> feature of the workplace. Expanding the scope of Title VII to permit
> discrimination lawsuits predicated only on unwelcome day-to-day critiques and
> assertedly unjustified negative evaluations would threaten the flow of
> communication between employees and supervisors and limit an employer's
> ability to maintain and improve job performance. Federal courts ought not be put
> in the position of monitoring and second-guessing the feedback that an employer
> gives, and should be encouraged to give, an employee.

*Davis v. Town of Lake Park, Fla.*, 245 F.3d at 1242.

### d.      Lack of Meaningful Job Assignments

Plaintiff has not demonstrated that a reasonable person in her position would view her

duties as adverse. *Doe*, 145 F.3d at 1449. The duties she performed did not involve a demotion,

salary decrease, or loss of benefits. At all times, plaintiff retained her same job title, grade, and

job series. (Doc. 21, Ex. 18. at 9, 61.)

Plaintiff requested to be transferred out of her position in the Patriot Project Office to

another position. (Doc. 21, Ex. 18 at 25.) Thereafter, she remained in her matrix organization,

performing duties that she deems not "meaningful." (Doc. 14 ¶ 8.) Plaintiff was a matrix

employee; she acknowledged, "[t]hey could put you wherever they wanted you to go." (Doc. 21,

Ex. 18 at 11.) The only duties she described as "secretarial" (doc. 21, Ex. 18 at 28) – putting two

charts together (doc. 21, Ex. 2 at 128), were duties previously performed by her supervisor, Mr. McFalls, not a secretary (doc. 21, Ex. 2 at 128). Although plaintiff wanted "more challenging job assignments"(doc. 14 ¶ 13), Mr. McFalls noted, "[the work she did] is not what I call the most creative work in the history of mankind, no, but it is essential work and that's what is important," (doc. 21, Ex. 2 at 129). Just as "[a] university can assign its professors to teach the classes it needs them to teach," *Gupta*, 212 F.3d at 588, the Army could assign plaintiff the tasks that they needed her to perform. Plaintiff's claim of not being assigned meaningful, more challenging duties does not constitute an adverse employment action.

### e.   Combined Allegations

While the individual actions "might not have individually risen to the level of adverse employment action under Title VII," the court must consider whether the total weight of the actions considered collectively constitutes an adverse employment action. *Bass*, 256 F.3d at 1118-19. Even considering plaintiff's claims in combination, she fails to allege an actionable adverse employment action. *See Riccard v. Prudential Insurance Co.*, 307 F.3d 1277 (11th Cir. 2002)(combined allegations resulted in no alteration of compensation, terms, conditions, or privileges of employment); *Shannon v. BellSouth Telecommunications, Inc.*, 292 F.3d 712, 716 (11th Cir. 2002)(collective conduct not objectively serious and tangible enough to be cognizable absent deprivation of compensation which she otherwise would have earned).

An employer can prevail on summary judgment by showing that no genuine issue of material fact exists as to one or more elements of the plaintiff's prima facie case. *Pace v. Southern Ry. Sys.*, 701 F.2d 1383, 1390 (11th Cir 1983). In sum, plaintiff has not shown that the events of which she complains were adverse employment actions prohibited by the

13

discrimination provisions of Title VII. Because plaintiff failed to prove this element of her prima facie case defendant is entitled to judgment as a matter of law on plaintiff's disparate treatment Title VII claims.

### 2.    No Evidence of Pretext

Even if plaintiff had established a prima facie case of discrimination, the defendant satisfied its burden of production by providing evidence articulating legitimate, nondiscriminatory reasons for the actions of which plaintiff complains. *Burdine*, 450 U.S. at 254. Plaintiff has failed to present "significant[ly] probative" evidence to prove the articulated reasons were merely a pretext for intentional discrimination of any nature. *Elrod*, 939 F.2d at 1470.

### a.    Denial of Opportunity to Attend Training Course

Assuming the denial of an opportunity to attend the training course was an actionable adverse personnel action, defendant has provided legitimate, nondiscriminatory reasons for its decision, which plaintiff has not rebutted. Plaintiff alleges racial discrimination was the reason she was denied training. (Doc. 21, Ex. 18 at 36-37.) The mere fact that plaintiff alleges she was the only qualified individual and the first to have submitted her packet does not necessitate that management was required to select her for the training course. Contrary to plaintiff's unsupported allegations, the record demonstrates that there were other individuals in the office who were qualified for the training. In making the selection for this particular training course, Mr. Blaine did not select plaintiff to attend the course at that time because another individual, Mr. Zapata, had been in the office longer and had earned the right to attend, and plaintiff had just finished other long term training. (Doc. 21, Ex. 13 at 256-259, 298-312; Ex. 15 at 18.)

Furthermore, at the time plaintiff submitted her application, Mr. Greenmeyer's application was already being processed for attendance at the program. (Doc. 21, Ex. 15 at 17.)  Plaintiff has offered no evidence on which a reasonable jury could find that defendant's articulated legitimate, non-discriminatory reasons for not sending her to the training course at the particular time she wanted to go were a pretext for unlawful discrimination.

### b.    Performance Appraisal

Assuming the performance appraisal was adverse personnel action, defendant has offered a legitimate, non-discriminatory reason for the appraisal:  Mr. Grundt believed in good faith that plaintiff's performance warranted a "B" rating.

There is no evidence disputing that Mr. Grundt made an honest assessment of plaintiff's overall performance and rated her accordingly.  This rating was the first time he rated plaintiff under a new performance appraisal system. (Doc. 21, Ex. 3 at 13.)  Mr. Grundt justified plaintiff's "B" rating (the second highest rating) by stating that plaintiff "was not effectively managing the test programs that she had assigned to her." (Doc. 21, Ex. 2 at 43.)  Mr. Grundt testified that other individuals expressed concerns to him about plaintiff's performance on the radar project. (Doc. 21, Ex. 3 at 17-18.)  Plaintiff admits that, prior to this rating, she was not doing substantive work and her work was very limited. (Doc. 21, Ex. 18 at 23-24.)  She testified: "prior to the test program actually taking off, there were no problems because it was just a matter of reading a document, making notations, either concurring or non-concurring and forwarding the document back to the person who was responsible for it." (*Id.*)  Plaintiff also acknowledges that an employee, other than her supervisors, was not satisfied with her work on the test program once she actually began doing substantive work. (Doc. 21, Ex. 18 at 20.)

15

Finally, although plaintiff alleges that her supervisors inappropriately downgraded her performance appraisal because she would not reschedule the trip to the China Lake testing area, Mr. Grundt and Mr. Blaine testified that plaintiff's inability to attend the meeting at China Lake did not negatively impact her performance evaluation. (Doc. 21, Ex. 3 at 39-40; Ex. 15 at 36-37.) Both testified that travel was routine in the office, and sometimes substitutions were necessary. (*Id.*)[7]

Plaintiff has provided no evidence rendering Mr. Grundt's explanation unworthy of belief. The only evidence proffered to infer that Mr. Grundt's explanation was pretextual was plaintiff's unsupported allegations. Plaintiff's speculation and conclusory allegations are insufficient to override the legitimate non-discriminatory reasons provided by the defendant. *See Carter v. City of Miami*, 870 F.2d 578, 585 (11th Cir. 1989)(citing *Young v. General Foods Corp.*, 840 F.2d 825, 830 (11th Cir. 1988)). If the proffered reason for the business decision is one that might motivate a reasonable employer, then "an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000)(en banc). Plaintiff may not "substitute [her] business judgment for that of the employer." *Id.* at 1030. Where a defendant has articulated legitimate, nondiscriminatory reasons for an employment decision, plaintiff "cannot succeed by simply quarreling with the wisdom of that reason." *Id.* Plaintiff has not presented evidence sufficient to create a jury question that the defendant's proffered reasons

---

[7]Both individuals involved with the rating deny that plaintiff's failure to attend the meeting at China Lake affected their rating of her in any way. (Doc. 21, Ex. 3 at 40; Ex. 15 at 36.) But, even if this allegation were true, it would be a race/gender/retaliation neutral reason for downgrading her performance appraisal that is not prohibited by Title VII and will not be second-guessed by the court.

for the performance appraisal were pretext for discrimination based on the plaintiff's race or gender.

### c.      Lack of Meaningful Job Assignments

Even if plaintiff had established an adverse personnel action related to being assigned lesser duties, (which she did not), summary judgment would nevertheless be appropriate because the defendant provided evidence of legitimate, non-discriminatory reasons for these actions and plaintiff has not produced evidence to show pretext for discrimination.  Mr. McFalls testified that, after plaintiff moved out of the Patriot Office, she performed an assignment in the Unmanned Area Vehicle Office. (Doc. 21, Ex. 14 at 31.) She also worked on a special project with Dr. Bruce Fowler. (*Id.* at 32.) Plaintiff worked on software security and compiled a list of senior test votes. (Doc. 21, Ex. 2 at 124.)  She also worked on a project for Mr. McFalls compiling the necessary matrix support from the project managers to understand the matrix organizations' downsizing. (*Id.* at 124-126.) Mr. McFalls also testified that he assigned plaintiff significant duties, including a project that ended up being reviewed by the Secretary of the Army. (*Id.* at 125.) Mr. McFalls could not independently assign plaintiff to a position within a Programs Management ("PM") office because, to be assigned a position within a PM office, the office had to be willing to accept the employee and to pay the employee's salary. (*Id.* at 124.) He testified that no PM office was willing to accept plaintiff and pay her salary, and plaintiff has provided no evidence to dispute this. (*Id.* at 54.)

Defendant has offered evidence that it assigned plaintiff duties for legitimate, nondiscriminatory, business-oriented reasons. Plaintiff has offered no evidence of pretext. Summary judgment is therefore appropriate as to this allegation.

### C.    Retaliation Claims

To establish a prima facie case of retaliation under Title VII, plaintiff must prove: (1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir. 1998). A plaintiff must establish that she experienced an adverse personnel action in the context of both anti-discrimination claims and retaliation claims. *Davis v. Town of Lake Park, Fla.*, 245 F.3d at 1238. As discussed when analyzing plaintiff's anti-discrimination claims, this court finds that none of the allegations made by plaintiff constitute adverse personnel actions. However, even assuming adverse personnel actions, her claims fail because she has not produced evidence demonstrating a causal link between any protected activity and those actions.[8]

Plaintiff contends that her active participation in the Redstone Area Minority Employee's Association ("RAMEA") is protected activity and that she has been retaliated against for this protected activity. (Doc. 14 ¶¶ 5, 11.) According to the RAMEA website, the organization was not founded until July 13, 2000. (See RAMEA website at http://www.ramea7.com/newhomepage.html) Plaintiff's activity on behalf of the RAMEA

---

[8]An additional, alternative basis for summary judgment on the retaliation claim is plaintiff's failure to present evidence that the defendant's proffered legitimate non-discriminatory reasons for the actions at issue were a pretext for retaliation. The court's previous analysis of pretext concerning the race and sex discrimination claims also applies to plaintiff's retaliation claims.

organization cannot be considered protected activity in this case and was not a factor in the decision-making process as the RAMEA organization was not founded until after the events at issue herein occurred.

### 1. Denial of Opportunity to Attend Training Course, Rescheduling of China Lake Meeting, and Performance Appraisal

The chronology of events establishes that plaintiff's being denied the opportunity to attend the training course, the rescheduling of the China Lake meeting, and performance appraisal were not the result of retaliation for prior protected EEO activity. Plaintiff filed her formal EEO complaint on April 19, 1999. (Doc. 21, Ex. 16.) Plaintiff submitted her request for training in October 1997; it was returned to her in February 1998. (Doc. 21, Ex. 15 at 17-20.) The China Lake Trip occurred in May 1998. (Doc. 14 ¶ 6.) The performance appraisal at issue was presented on June 30, 1998. (Doc. 21, Ex. 5.) The alleged adverse actions could not be retaliation for protected activity that had not occurred.[9] Therefore, plaintiff's allegations of retaliation for protected activity fail for these three claims.

### 2. Lack of Meaningful Job Assignments

Plaintiff failed to prove a prima facie case of retaliation on her lack of meaningful job assignments claim because she has shown no evidence to create a genuine issue of material fact as to the causal nexus between her protected activity and the alleged adverse employment action. "To establish a causal connection, a plaintiff must show that 'the decision-maker[s] [were] aware of the protected conduct,' and 'that the protected activity and the adverse action were not wholly

---

[9] Plaintiff's proffered evidence from Steve Tiwari (doc. 26, Ex. 2) and Abner Merriweather (doc. 26, Ex. 3) is irrelevant, as the Tiwari evidence pertains to alleged activity long after the events at issue, and the Merriweather evidence pertains to activity in an unknown time frame.

unrelated.'" *Gupta*, 212 F.3d at 590 (citing *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999)); *see also Raney v. Vinson Guard Service, Inc.,* 120 F.3d 1192, 1197 (11th Cir. 1997) ("a plaintiff must, at a minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action"). It is not enough for the plaintiff to show that someone in the organization knew of the protected expression; instead, the plaintiff must show that the person taking the adverse action was aware of the protected expression. *Raney*, 120 F.3d at 1197. While this awareness may be established by circumstantial evidence, *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993), in proving causation, there must be "more evidence than mere curious timing coupled with speculative theories," *Raney*, 120 F.3d at 1197 (citing *Goldsmith*, 996 F.3d at 1163), or "hunches unsupported with significant probative evidence," *Raney*, 120. F.3d at 1198.

Plaintiff testified that, at her midyear review in March 1999, Mr. McFalls told her she had been "blacklisted" and "labeled a troublemaker." (Doc. 21, Ex. 18 at 29.) One's being blacklisted or being branded a troublemaker may, but does not necessarily result from protected activity under Title VII. However, plaintiff went on to testify that Mr. McFalls told her she had been blacklisted "because of [her] filing complaints." (*Id.* at 30.)[10] Mr. McFalls's testimony does not connote any protected activity being involved with plaintiff's being "black-listed." (Doc. 26, Ex. 4 at 116; Doc. 21, Ex. 14 at 54-55.) At his deposition, Mr. McFalls testified he first became aware of plaintiff's engaging in EEO activity "after the appraisal process that [he] went through with her." (Doc. 21, Ex. 14 at 46.) This appraisal process is not the appraisal

---

[10]Plaintiff did not allege "reprisal" as a basis for discrimination in her Formal Complaint of Discrimination on April 15, 1999. (Doc. 21, Ex. 16.)

process already discussed concerning Grundt and Blaine; it is the next appraisal cycle, after the events in question occurred.

To the extent there may be a conflict in the evidence as to when Mr. McFalls learned of plaintiff's EEO activity, the court assumes for purposes of this motion that, in March 1999, Mr. McFalls told plaintiff that she had been blacklisted because of her EEO activity. These allegations are not sufficient to show retaliatory intent with regard to plaintiff's job assignments claim. Even in her complaint, plaintiff acknowledged that Mr. McFalls "either refused **or was unable** to give [her] any meaningful job assignments." (Doc. 14 ¶ 8.) Under the matrix system, in order to assign an employee to a position in a projects office, the project office had to pay the employee's salary. (Doc. 21, Ex. 14 at 55.) For purposes of retaliation, which like discrimination involves real intent, proof of actual knowledge is required. *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1317 n.5 (11th Cir. 2003)(quoting *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1262 (11th Cir. 2001)). Plaintiff has failed to provide evidence that the decision makers in the project offices who made the decisions to hire and pay matrix employees had knowledge of her EEO activity or of her being blacklisted because of EEO activity. There is no evidence connecting the unidentified decision makers and the decisions not to select her from the pool of matrix employees to serve in any particular office or offices. Thus, plaintiff failed to produce sufficient evidence to demonstrate the required causal nexus. This failure to establish an element of a prima facie case of retaliation requires a finding in favor of the defendant on summary judgment.

**D.     Hostile Work Environment**

In response to Defendant's Motion for Summary Judgment, plaintiff attempted to assert a

hostile work environment claim.  (*See* Plaintiff's Brief in Opposition to Defendant's Motion for

Summary Judgment at p. 4.)  Neither the words "hostile environment" or "harassment" are

included in plaintiff's Second Amended Complaint.[11]  Thus, this issue is not properly before the

court because it was waived by plaintiff's failure to properly plead this cause of action in the

Amended Complaint or the Second Amended Complaint.  *Paschal v. Fla. Public Employees*

*Relations Commission*, 666 F.2d 1381, 1383-84 (11th Cir. 1982).

Even assuming that the complaint could be construed as stating a hostile environment

claim, the evidence of record is insufficient to support such a claim.  "[M]otions for summary

judgment or judgment as a matter of law are appropriate to 'police the baseline for hostile

environment claims.'"  *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244 (11th Cir. 1999)(*en*

*banc*)(citing *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 264 n.8 (5th Cir. 1999)).  In a

case involving allegations of a hostile work environment, the Eleventh Circuit has held:

> A hostile work environment claim under Title VII is established upon proof that
> "the workplace is permeated with discriminatory intimidation, ridicule, and insult,
> that is sufficiently severe or pervasive to alter the conditions of the victim's
> employment and create an abusive working environment." *Harris v. Forklift*
> *Systems, Inc.*, 510 U.S. 17, 21 . . . (1993).  This court has repeatedly instructed
> that a plaintiff wishing to establish a hostile work environment claim show: (1)
> that he belongs to a protected group; (2) that he has been subject to unwelcome
> harassment; (3) that the harassment must have been based on a protected
> characteristic of the employee, such as national origin; (4) that the harassment
> was sufficiently severe or pervasive to alter the terms and conditions of
> employment and create a discriminatorily abusive working environment; and (5)

---

[11]  Plaintiff did raise a hostile environment claim in her original Complaint.  (Doc. 1,
attachment at 2, allegation 4.)  Such a claim was clearly abandoned in the First (doc. 4) and
Second Amended Complaints (doc. 14).

> that the employer is responsible for such environment under either a theory of
> vicarious or of direct liability. [Citation omitted].

*Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

Even if the court were to consider all of plaintiff's allegations as true, the evidence falls well short of establishing a prima facie case of a hostile work environment. The total allegations would include: (1) not being selected to attend a particular training course the first time she requested to attend the course; (2) the Army's not changing a meeting date to accommodate her personal desires as opposed to those of other individuals involved with her program; (3) a performance appraisal that plaintiff did not like; and (4) a change in her matrix position. In addition, plaintiff presented evidence of a contentious grievance meeting. (Doc. 26, Ex. 1.) These events do not even involve harassment based on plaintiff's race or gender, and fall well short of the claims rejected by the *Mendoza* court in the context of a hostile environment based upon sex. *See Mendoza*, 195 F.3d at 1246-48.

The conduct alleged by plaintiff was clearly not sufficiently severe or pervasive to meet the standards developed in the Supreme Court to show a level of conduct actionable under Title VII. In *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993), the Supreme Court set forth the substantive contours of hostile environment claims under Title VII. The Court held that harassment constitutes actionable discrimination under Title VII only when the workplace is "permeated with 'discriminatory intimidation, ridicule, and insult,'" that is "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* at 21 (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment" from the perspective of a reasonable person is "beyond Title VII's purview" and

23

not actionable. *Id.* Reiterating the standard established in *Harris*, the Supreme Court has also stated, "[w]e have made it clear that conduct must be **extreme** to amount to a change in the terms and conditions of employment . . . ." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (emphasis added). The Supreme Court noted that these demanding standards for assessing allegations of hostile environment were created to ensure that Title VII does not become a "general civility code." *Id.* Thus, even where a plaintiff may subjectively perceive alleged harassment as abusive or hostile, the plaintiff must also prove that a reasonable person in his or her shoes would have found the conduct to be severe or pervasive.

The baseline of actionable conduct is not low, and the conduct alleged by plaintiff in this case falls "well short of the level of either severe or pervasive conduct sufficient to alter [the] terms or conditions of employment." *Mendoza*, 195 F.3d at 1247. Had plaintiff not waived a hostile work environment claim, she would still not be entitled to relief because she has not offered evidence of harassment, much less harassment sufficient to be actionable under Title VII.

## IV. CONCLUSION

For the reasons stated herein, the court finds defendant's Motion for Summary Judgment is due to be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this the 25th day of March, 2004.

Sharon Lovelace Blackburn
**SHARON LOVELACE BLACKBURN**
United States District Judge

24